**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X

JACQUELINE SMITH,

Plaintiff,

-*against*-

VIACOMCBS INC.,

Defendant.

------------------------------------------------------------------X

**Docket No.:21-cv-1860**

**COMPLAINT**

**Plaintiff** *DEMANDS*
*A TRIAL BY JURY*

Plaintiff by and through her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendant, upon knowledge as to herself and her own actions and upon information and belief as to all other matters, as follows:

**NATURE OF THE CASE**

1.      This is a civil action based upon Defendant's violations of Plaintiff 's rights guaranteed to her by: (i) **Title VII of the Civil Rights Act of 1964**, as amended ("Title VII"); (ii) **Section 1981 of the Civil Rights Act of 1866** ("Section 1981"), 42 U.S.C. § 1981; (iii) the discrimination provisions of the **New York State Human Rights Law**, New York State Executive Law, § 296 *et seq*. ("NYSHRL"); (iv) the discrimination provisions of the **New York City Human Rights Law**, New York City Administrative Code § 8-107 *et seq*. ("NYCHRL"); and (v) any other claim(s) that can be inferred from the facts set forth herein.

2.      Plaintiff seeks redress for the injuries she has suffered as a result of her employers' **discrimination** on the basis of, *inter alia*, her race and sex.

**JURISDICTION AND VENUE**

3.      Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §§1331 and 1343.

4.      The Court has supplemental jurisdiction over the claims of Plaintiff brought under state

law pursuant to 28 U.S.C. §1367.

5.    Venue is proper in this district in that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York. 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

6.    Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") upon which this Complaint is based.

7.    Plaintiff received a Notice of Right to Sue from the EEOC March 1, 2021,  with respect to the instant charges of discrimination.  A copy of the Notice is annexed to this Complaint.

8.    This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

9.    Prior to the commencement of this action, Plaintiff served a copy of this complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York on March 3, 2021, in accordance with N.Y.C. Admin. Code §8-502(c).

## PARTIES

10.   Plaintiff JACQUELINE SMITH (hereinafter "Plaintiff"), is a Black woman and a resident of the State of New Jersey. At all relevant times herein, Plaintiff was an employee of Defendant.

11.   At all relevant times herein, Plaintiff was and is a "person" and an "employee" entitled to protection as defined by state and federal laws.

12.   At all relevant times herein, Defendant VIACOMCBS INC. (hereinafter "Defendant") was and is a Delaware corporation authorized to do business in the State of New York.

## **FACTUAL ALLEGATIONS**

13.     Defendant is a multinational media corporation.

14.     Throughout Plaintiff's employment with Defendant she was confronted with a hostile work environment.

15.     Plaintiff's career with Defendant began in the fall of 2006 as an unpaid intern for the VH1 network television show, Best Week Ever.

16.     That position was followed by temporary positions as an Executive Assistant at the VH1 and Nickelodeon networks.

17.     Plaintiff's performance consistently met or exceeded reasonable expectations. In fact, Plaintiff was offered a permanent position at Nickelodeon, which she declined.

18.     On May 31, 2016, Plaintiff began working in the position of freelance Executive Assistant with the BET Network where she earned $26.00 an hour.

19.     In October of 2016, Plaintiff was converted to a staff employee with benefits.

20.     Although Plaintiff was hired as an executive assistant and not a personal assistant and, therefore, was not required to be available twenty-four hours a day and seven days a week, her manager, Maureen Carter ("Carter"), repeatedly texted Plaintiff over the weekend for non-emergency tasks.

21.     Plaintiff would not respond until the next business day in order to create a boundary between her professional and personal life.

22.     A mutual colleague, Martine Saint-Vil, Director of Finance, informed Plaintiff that Carter had complained to her about Plaintiff not answering her calls or texts over the weekend.

23.     Carter discriminated against women who wanted to expand and grow beyond their current roles in the company.

24.  For example, Carter denied Plaintiff access to company events even when Plaintiff was allowed to attend.

25.  Carter also commented about her appearance in the presence of others. On one occasion, Plaintiff walked into a meeting at Carter's request only to have Carter announce to the room full of executives that Plaintiff was her assistant and would "look better" than how she was dressed for her presentation.

26.  Plaintiff was humiliated and embarrassed by Carter's public statement.

27.  On another occasion, Plaintiff was asked and agreed to be featured in a department-led production with talent.

28.  When Carter discovered that Plaintiff was appearing in the video, Carter brought her other manager, Jermaine Hall into an impromptu meeting with the Senior Director of Production, Jomo Davis, and declared that Plaintiff could not be featured in any more shows claiming it was a distraction from her work. Plaintiff was never again asked to be in a production.

29.  Defendant also ignored instances of racial harassment at the workplace.

30.  During the 2017 BET Awards, Andrea Kerr ("Kerr"), Executive Assistant to the former Senior Vice President of Digital, approached Plaintiff and told her that she felt uncomfortable working at BET as a white woman and said it was because, "You know, we used to own you."

31.  Plaintiff was completely taken aback by Kerr's comment and reported it to her managers, Carter and Jermaine Hall. No action was taken and Kerr continued her employment with Defendant.

32.  In January 2018, Carter approached Plaintiff and told her that another executive, Ken Gibbs ("Gibbs"), Vice President of Digital Video & Social Content, complained about her in an

executive leadership meeting for sending him a calendar invite that conflicted with another meeting on his calendar.

33. When Plaintiff called Gibbs to apologize, he indicated that it was "no big deal."

34. After Plaintiff told Carter that Plaintiff had called Gibbs and he did not seem upset about the incident, Carter directed Plaintiff to use a scheduling assistant to schedule his meetings.

35. After Plaintiff rescheduled the meeting and Gibbs declined it, Plaintiff returned to Carter's office to let her know.

36. Later that day, Carter sent Plaintiff an email inexplicably and falsely accusing Plaintiff of storming into her office to yell at her about a colleague and acting unprofessionally by yelling in the hallway.

37. Plaintiff immediately contacted Human Resources (HR) representative, Gerald Cauley ("Cauley"), and met with him later that day to complain about the incident that had occurred and previous incidents of discrimination.

38. Plaintiff described to Cauley that she felt Carter was trying to sabotage her reputation with Defendant by documenting falsehoods about Plaintiff in order to build a case against her.

39. Plaintiff left her employment with Defendant in February 2018.

40. In November of 2018, Plaintiff was hired for a position with Defendant as a freelance Production Coordinator with Viacom Digital Studios earning $19.00 per hour.

41. In March of 2019, Plaintiff met with Carter for a lunch meeting. By then Plaintiff had resigned from the Production Coordinator position.

42. Carter asked if Plaintiff wanted to join her team as her Project Manager. Plaintiff declined but Carter then asked Plaintiff if she wanted to resume her former position as Executive Assistant. In that role, the Vice President of Content was her primary manager and Carter was her secondary manager.

43.    In April 2019, Plaintiff was hired for the position of freelance Executive Assistant at BET Digital earning $31.00 an hour.

44.    In that position Plaintiff worked under the primary supervision of interim Vice President of Content, Amber Payne ("Payne").

45.    On May 31, 2019, Plaintiff's mother passed away and Plaintiff went on bereavement leave.

46.    In October of 2019, Plaintiff attended the 2019 Hip Hop Awards in Atlanta and was asked to assist Amy Barnett ("Barnett"), Senior Vice President, BET Digital, with ticket distributions to her team.

47.    After meeting Barnett to drop off her tickets, Barnett called Plaintiff to inform her that her business laptop had been stolen.

48.    Plaintiff called the Atlanta police on Barnett's behalf. When Plaintiff relayed to Barnett that the officer with whom she had spoken believed the laptop to have been abandoned and not stolen based on the facts provided, Barnett told Plaintiff "Can you get on the phone [with Atlanta police] and be a bitch? Because I know how to be a bitch."

49.    Plaintiff was shocked by Barnett's statement and informed Carter about this incident.

50.    In November 2019, Payne was demoted to Executive Producer and Angela Burt-Murray, who was hired as Vice President of Content, became Plaintiff's supervisor along with Carter.

51.    In December 2019, Plaintiff was promoted to Senior Coordinator with a pay rate increase as of January 2020 to $35.00 per hour.

52.    On August 6, 2020, Plaintiff noted that Carter had a meeting scheduled with Shanell Parrish-Brown ("Parrish-Brown"), Vice President, Employment Law, and Ericka Wright-Tomlinson ("Wright-Tomlinson"), Senior Vice President, Human Resources. Plaintiff consulted with Johnny Cooper, Executive Assistant to Payne, who advised her that Carter

was seeking to establish reasons to terminate Kacey Greene ("Greene"), Senior Interactive Creative Director.

53.    On August 10, 2020, Plaintiff received an email from Wright-Tomlinson asking if she was free to meet later that day.

54.    Plaintiff informed Wright-Tomlinson that she was available and later received a meeting invitation for a 45-minute meeting with Parrish-Brown and Wright-Tomlinson.

55.    When Wright-Tomlinson appeared for the video conference meeting, she wore a sports bra which exposed her chest. Parrish-Brown asked her to put on a more appropriate top.

56.    Parrish-Brown and Wright-Tomlinson introduced themselves and Parrish-Brown began the conversation by telling Plaintiff that she was not in trouble but would be asked some uncomfortable questions.

57.    Parrish-Brown asked Plaintiff if she had any direct interaction with Greene.  Parrish-Brown then told Plaintiff that someone had claimed that she was involved in a sexual relationship with Greene. Plaintiff categorically denied the false accusation.

58.    Parrish-Brown went on to tell Plaintiff that someone had reported that Plaintiff had engaged sexual activity with Greene and a third person. Plaintiff was disgusted and in complete shock.

59.    Plaintiff was humiliated to have two women whom she had never met make false allegations of a sexual nature.

60.    Plaintiff burst into tears as Parrish-Brown and Wright-Tomlinson continued their humiliating line of questioning, which they conducted as if the salacious allegations were true.

61.    Plaintiff was upset and felt violated by the allegations.

62.    When Plaintiff later called Carter and informed her that she had been accused of having sexual relations with Greene, Carter initially commented, "Is it true?"

63.    When Plaintiff stated that it was not true, Carter replied, "This is the type of thing that happens to pretty girls."

64.    Although Carter had met with Parrish-Brown and Wright-Tomlinson the week before, Carter denied that anyone from HR had contacted her about the allegations against Plaintiff.

65.    Upon information and belief, Carter had instigated the rumor that Plaintiff had a sexual relationship with Greene.

66.    On August 28, 2020, Carter announced that Greene is no longer employed with Defendant.

67.    As a result of Defendant's actions, Plaintiff felt humiliated, degraded, victimized, embarrassed and emotionally distressed.

68.    As a result of the Defendant's discriminatory and intolerable treatment of Plaintiff, she suffered severe emotional distress.

69.    As a result of the acts and conduct complained of herein, Plaintiff has suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

70.    Defendant's actions and conduct were intentional and intended to harm Plaintiff.

71.    As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against the Defendant.

**FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION IN VIOLATION OF TITLE VII**

72.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

73.   Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(1), states in relevant part:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, **sex**, or national origin[.] (Emphasis added.)

74.   As described above, Defendant discriminated against Plaintiff on the basis of her race and sex in violation of Title VII, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, disparate treatment and severe or pervasive harassment of Plaintiff based on her sex.

75.   As a result of the unlawful discriminatory conduct of Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

76.   The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

**SECOND CAUSE OF ACTION**
**FOR DISCRIMINATION IN VIOLATION OF SECTION 1981**

77.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

78.   42 U.S.C. § 1981 states in relevant part as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce

> contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

79.   Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981, by discriminating against Plaintiff because of her race (Black).

80.   Plaintiff was subjected to negative disparate treatment, discrimination, humiliation, embarrassment, adverse employment actions and loss of employment due to her race.

**THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION VIOLATION OF NYSHRL**

81.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

82.   <u>New York State Executive Law</u> §296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, **<u>sex</u>**, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment. (Emphasis added.)

83.   As described above, Defendant discriminated against Plaintiff on the basis of her race and sex in violation of NYSHRL, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment and disparate treatment.

84.   As a result of Defendant's unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and

10

anxiety, and emotional pain and suffering, for which she is entitled to an award of monetary

damages and other relief.

85.    Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton

violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION IN VIOLATION OF NYCHRL

86.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

87.     The Administrative Code of City of New York § 8-107(1)(a) provides that

> It shall be an unlawful discriminatory practice: for an employer or
> an employee or agent thereof, because of the actual or perceived age,
> race, creed, color, national origin, **gender**, disability, marital status,
> partnership status, caregiver status, sexual and reproductive health
> decisions, sexual orientation, uniformed service or alienage or
> citizenship status of any person... to refuse to hire or employ or to
> bar or to discharge from employment such person or to discriminate
> against such person in compensation or in terms, conditions or
> privileges of employment. (Emphasis added.)

88.    As described above, Defendant discriminated against Plaintiff on the basis of her race and

gender in violation of the NYCHRL by, including but not limited to, subjecting her to

disparate working conditions, including failure to promote, and denying her the opportunity

to work in an employment setting free of unlawful discrimination and harassment.

89.    As a result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL,

Plaintiff  has suffered, and continues to suffer, mental anguish and emotional distress,

including, but not limited to, depression, humiliation, embarrassment, stress and anxiety,

loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is

entitled to an award of monetary damages and other relief.

90.    Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## **JURY DEMAND**

91.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A.    Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII, Section 1981, the NYSHRL, and the NYCHRL in that Defendant discriminated against Plaintiff on the basis of her race and sex;

B.    Awarding damages to Plaintiff for all damages resulting from Defendant's unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.    Awarding Plaintiff compensatory damages related to injuries suffered as per Plaintiff's State-law claims;

D.    Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

E.    Awarding Plaintiff punitive damages;

F.    Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G.    Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful employment practices.

Dated: New York, New York
          March 2, 2021

                                    **PHILLIPS & ASSOCIATES,**
                                    **ATTORNEYS AT LAW, PLLC**

By:      /s/ Marjorie Mesidor\_\_\_\_\_
Marjorie Mesidor, Esq.
Joseph Myers, Esq.
*Attorneys for Plaintiff*
585 Stewart Avenue, Suite 410
Garden City, New York 11530
T: (212) 248-7431
F: (212) 901-2107
mmesidor@tpglaws.com
jmyers@tpglaws.com